

**U.S. Department of Justice**

**United States Attorney**
**District of Maryland**

| | |
|---|---|
| Stephen M. Schenning<br>Acting United States Attorney<br><br>Derek E. Hines<br>Assistant United States Attorney | 36 S. Charles Street       DIRECT: 410-209-4817<br>Fourth Floor                     MAIN: 410-209-4800<br>Baltimore, MD 21201-3119  EMAIL: derek.hines@usdoj.gov |

May 3, 2017

<u>**VIA EMAIL AND FIRST CLASS MAIL**</u>
Richard C B Woods
Woods Law Group, PA
2105 Southcliff Dr.
Baltimore, MD 21209
Email: rwoods@woodslawgroup.net

Re:   <u>United States v. Charles Gilliam, Jr. (aka "Big Head Charlie", "Big C", "Chuck"); Criminal Docket No. 16-429-JKB (D. Md.)</u>

Dear Mr. Woods:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to your client, Charles Gilliam, Jr. (the "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by May 10, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offenses of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Indictment now pending against him: conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and conspiracy to distribute and possess with intent to distribute 280 grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offenses

2.   The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a.   That on or about the dates charged in the Indictment, in the District of Maryland:

   1.   The Defendant knowingly, willfully, and unlawfully agreed with one or more persons to distribute, and possess with intent to

1

distribute, a mixture or substance containing heroin and a mixture or substance containing cocaine base;

2. The Defendant knew that the conspiracy would distribute a detectable amount of heroin and the Defendant knew that the conspiracy would distribute more than 280 grams of a mixture or substance containing cocaine base; and

3. The participation by the Defendant was knowing and voluntary, and not by accident or mistake.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life imprisonment, with a ten (10) year mandatory minimum, followed by a term of supervised release of at least five years, and a fine of $10,000,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. Pursuant to 21 U.S.C. § 881, and 28 U.S.C. § 2461, the Defendant will also have to forfeit to the United States the items identified in paragraph 9. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

  a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts contained in Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. **Base Offense Level 32.** This Office and the Defendant agree that, the applicable base offense level is a level 32 pursuant to U.S.S.G. §§ 2D1.1(a)(5), 2D1.1(c)(3), 2D1.1 to account for the equivalent of at least 3 kilograms of heroin, but less than 10 kilograms of heroin, reasonably attributable to the Defendant's involvement in this conspiracy. **This quantity constitutes a base offense level of thirty-~~four~~ two (32).** DAL RCBW C.C.

    b. **Aggravating Role Enhancement**. This Office and the Defendant further stipulate and agree that the applicable base offense level should be increased by three (3) levels to pursuant to U.S.S.G. §§ 3B1.1(b) because the Defendant was a manager or supervisor and the criminal activity involved five or more participants and was otherwise extensive.

    c. **Maintaining Premises Enhancement**. This Office and the Defendant further stipulate and agree that the applicable adjusted offense level should be increased by two (2) levels pursuant to U.S.S.G. §§ 2D1.1(b)(12) because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

    d. **Acceptance of Responsibility**. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. In light of the foregoing, the Defendant's anticipated **adjusted offense level is 34.**

    e. **Criminal History.** The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income. However, the parties presently anticipate that the Defendant's criminal history category is IV.

7. With respect to the calculation of criminal history, and the calculation of the advisory guidelines range, the parties agree that no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties reserve the right to bring to the Court's

4

attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct and any other factors relevant to the application of 18 U.S.C. § 3553(a). The parties agree that such information may be presented to the Court through attorney proffer or witness testimony.

## Waiver of Appeal

8. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

   b. The Defendant and this Office knowingly and expressly waive all rights pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's base offense level under U.S.S.G. § 2K2.1, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

9. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. The Defendant agrees to forfeit to the United States all of his right, title, and interest in the items identified in this paragraph and further agrees to forfeit to the United States all right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following:

   a. Items seized from the Defendant's residence at 8114 Dotty Road, Rosedale, Maryland 21237, including: a 2008 Chevrolet Impala, bearing Maryland Registration 8BZ7506 and VIN: 2G1WB58N589236607, U.S. Currency in the amount of $3,782, and a .357 Smith and Wesson loaded handgun with 6 rounds, serial number DAT5382, and a box of .38 ammunition.

b. Items seized from the stash house at 3012 Reese Street, Baltimore, MD, including: (1) a twenty-ton hydraulic press.

### Obstruction or Other Violations of Law

10. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

11. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum identified in Paragraph 3. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

12. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements,

promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Derek E. Hines
Assistant United States Attorney

I have read this agreement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-17-17
Date

_____
Defendant Charles Gilliam, Jr.

I am Charles Gilliam, Jr.'s attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5/17/2017
Date

_____
Richard Woods, Esq.

Attachment A

The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Law enforcement began an investigation in 2015 into a drug conspiracy involving the distribution of heroin and cocaine base (commonly known as crack) in the Baltimore Metropolitan area. As part of its investigation, law enforcement utilized a number of investigative techniques, including search warrants, GPS tracking, surveillance, wiretaps, and the installation of a camera and bug in a stash house used by members of the conspiracy.

The Defendant was a member of this drug trafficking conspiracy. The members of the conspiracy included, but were not limited to, Charles Gilliam, Jr., Theodore Smith, Darryl Scott, Anthony Hart, Leon Koger, Tarik Brooks, Jermaine Epps, Darren Farmer, Terry Downs, Asante Leroy Marshall, Kevin Rasean Moore (aka Akia Owens) and Eddie Lewis. Members of the conspiracy distributed several different controlled dangerous substances, including, but not limited to, heroin and cocaine base (commonly known as crack). Members of the conspiracy operated an open air drug market near the 600 block of Glenwood Avenue in the Woodbourne-McCabe neighborhood in Baltimore, Maryland. Here, as well as in other locations in Baltimore, Maryland, the members of the conspiracy oversaw the distribution of the organization's signature orange-top vials of crack cocaine. Members of the conspiracy purchased cocaine and converted the cocaine to cocaine base by cooking the cocaine in stash houses. Members of the conspiracy used residences in and around North Baltimore to cut, package and store narcotics. These locations included, but were not limited to the following locations in Baltimore: A house at 3012 Reese Street, an apartment at 5001 Midwood Avenue, and a house at 5215 Craig Avenue. Some members of the conspiracy, including the Defendant, sold large quantities of heroin, and used stash houses to process and repackage these narcotics for distribution. Some members of the conspiracy committed acts of violence in furtherance of the organization's activities. Some members of the conspiracy routinely carried firearms in furtherance of the conspiracy. Members of the conspiracy conducted counter-surveillance of law enforcement to prevent law enforcement from detecting their illegal activities. Members of the conspiracy frequently changed phones to thwart law enforcement. Members of the conspiracy used the proceeds of sales of narcotics to enrich themselves and to further the activities of the organization. Members of the conspiracy would collect money to pay for legal counsel for other members who were arrested for trafficking narcotics on behalf of the organization.

The Defendant was the leader of the organization and was responsible for distributing wholesale quantities of heroin on behalf of the organization. Law enforcement intercepted a number of calls over a phone used by the Defendant during which the Defendant discussed meeting up with other narcotics traffickers to distribute narcotics. During the month of August 2016, the Defendant was recorded on a video camera in the kitchen of one of the organization's stash houses engaging in drug trafficking activities. For example, on August 5, 2016, Charles Gilliam, Jr. was recorded in the stash house using a digital scale to weigh heroin and package heroin in clear plastic bags. On August 6, 2016, the Defendant was recorded on video mixing heroin with a cutting agent and manipulating the substance before scrambling the heroin in a ninja blender with various cutting

agents. The Defendant then put the heroin into bags and law enforcement intercepted a phone call during which the Defendant arranged to meet a customer "near Grandma's" to distribute heroin. On August 11 and August 12, 2016, Gilliam was also recorded on video preparing and packaging heroin in the stash house. On August 22, 2016, the Defendant was recorded on video in the stash house preparing heroin with Theodore Smith. During the conversation with Smith, the Defendant discussed the organization's sales of crack cocaine at the street shop and provided advice to Smith about how Smith could increase street sales of crack cocaine. The Defendant and Smith continued packaging and preparing heroin in the stash house, which was recorded on video. The Defendant stored his heroin in the stash house where cocaine and crack cocaine were stored by other members of the organization. On September 1, 2016, law enforcement seized narcotics in the stash house at 3012 Reese Street, including 130 grams of raw heroin, 15 grams of cocaine, 36 grams of diluted heroin and 20 filled-up orange top vials containing crack cocaine.

The Defendant supervised more than five of his co-conspirators. The Defendant paid money towards the rent of 3012 Reese Street, which was the organization's stash house, and maintained the premises for the purpose of manufacturing and distributing controlled substances, including heroin and crack cocaine.

The parties stipulate and agree that the amount of heroin reasonably foreseeable to the Defendant in, and in furtherance of, this conspiracy amounts to at least 3 kilograms of heroin, but less than 10 kilograms of heroin. The parties stipulate and agree that the amount of cocaine base reasonably foreseeable to the Defendant in, and in furtherance of, this conspiracy amounts to at least 280 grams of cocaine base, but less than 840 grams of cocaine base. The parties stipulate and agree that the total weight of heroin and cocaine, after converting crack cocaine to cocaine on an equal one-gram to one-gram basis, reasonably foreseeable to the defendant is the equivalent of between 3,000 kilograms of marijuana and 10,000 kilograms of marijuana, resulting in a base offense level of 32.

Derek E. Hines
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

5-17-17
Date

Charles Gilliam, Jr. Defendant

I am Charles Gilliam, Jr.'s attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

5/17/2017
Date

Richard Woods, Esq.

2